## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| CHARTER COMMUNICATIONS HOLDING COMPANY, LLC, a Delaware limited liability company; and CHARTER COMMUNICATIONS OPERATING, LLC, a Delaware limited liability company,<br><br>        Plaintiffs,<br>    vs.<br><br>KNOWTEQ SOLUTIONS LLC, a Texas limited liability company; NATOSHIA ELLZEY, an individual; and JOHN DOES 1-5,<br><br>        Defendants. | CASE NO. _____<br><br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiffs Charter Communications Holding Company, LLC ("**CCH**") and Charter Communications Operating, LLC ("**CCO**") (collectively, "**Charter**" or "**Spectrum**") state as follows for their Complaint for Fraud, Civil Conspiracy, Federal Trademark Infringement, Federal Unfair Competition, Common Law Unfair Competition, and Unjust Enrichment against Knowteq Solutions LLC ("**Knowteq Solutions**"), Defendant Natoshia Ellzey ("**Ellzey**") (collectively "**Defendants**"[1]), and Defendants John Does 1-5.

### NATURE OF THE ACTION

1.      Charter is one of the country's largest communications providers, and is widely recognized by consumers as a reliable and reputable provider of communications services.

2.      According to the FBI, malicious cyber activity is a threat to public safety and national and economic security.   Impersonation of legitimate businesses in an effort to obtain

---

[1] "Defendants" also includes any authorized representatives of Knowteq Solutions.

sensitive financial and personal information from consumers is a rapidly growing, serious cyber problem in the United States, impacting all sectors of businesses, including the communications sector.

3.       Defendants, without authorization, impersonate Charter, defrauding Charter subscribers by stealing sensitive financial and other information.

4.       Defendants likewise defraud Charter directly by impersonating subscribers of Charter, without authorization, and providing Charter with fraudulent payment information.

5.       Defendants initiate their fraudulent scheme by sending unauthorized and unsolicited text messages to subscribers of the CHARTER SPECTRUM and SPECTRUM brands of communication services.  These text messages falsely hold Knowteq Solutions out as an authorized agent of Spectrum (which is Charter's brand name), or even as Spectrum itself, and promise a discount on a subscriber's monthly Spectrum bill if he or she makes a payment through Knowteq Solutions.  When a subscriber responds, Defendants steal the subscriber's credit card or banking information and make a payment directly to themselves.   Defendants then contact Charter, posing as the Charter subscriber, and use invalid payment information to make a false "payment" to Charter. That payment is later reversed, leaving the subscriber's monthly bill unpaid.

6.       Defendants perpetuate their fraud by intentionally utilizing the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks in both text messages and telephone conversations with Charter subscribers.

7.       Charter brings this action to hold Defendants accountable for their actions and to protect the public from the ongoing threat posed by Defendants' fraudulent scheme.

8.       This is an action for (i) fraud under Texas common law; (ii) civil conspiracy

under Texas common law; (iii) infringement of registered trademark(s) in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; (iv) false designation of origin and trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (v) common law unfair competition; and (vi) common law unjust enrichment.

## THE PARTIES

9.  Plaintiff Charter Communications Holding Company, LLC is a Delaware limited liability company with its principal place of business at 12405 Powerscourt Drive in St. Louis County, Missouri.

10.  Plaintiff Charter Communications Operating, LLC is a Delaware limited liability company with its principal place of business at 12405 Powerscourt Drive in St. Louis County, Missouri.

11.  Defendant Knowteq Solutions LLC is a Texas limited liability company with a registered address of 10122 Churchill Oaks Lane, Houston, Texas 77044.

12.  Defendant Natoshia Ellzey is an individual residing in the State of Texas with a residence at 24323 Veratti Lane, Katy, Texas 77493.  Ellezy is the sole member and manager of Knowteq Solutions.

13.  Defendants designated herein as John Does 1-5 are the individuals and/or entities who instructed, coached, and/or counseled Defendants on setting up, and participating in, the fraudulent scheme as described herein.  The identity of John Does 1-5 is presently unknown to Charter.  Charter will amend the Complaint to name the unidentified individuals and/or entities once it has learned their names through discovery.

## JURISDICTION AND VENUE

14.  This Court has jurisdiction over this action pursuant to: (i) 28 U.S.C. §§ 1331,

1338(a) and (b), 15 U.S.C. § 1121, as an action for violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; and (ii) 28 U.S.C. § 1367(a), pursuant to the principles of supplemental jurisdiction.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the Defendants reside in this judicial district.

16.     Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

17.     Specifically, Defendants operate their fraudulent scheme from Texas, have purposefully targeted subscribers of Charter's Spectrum-branded services ("**Charter subscribers**"), including those residing in Texas, sent fraudulent solicitations (text messages) to Charter subscribers residing in Texas, and interacted with Charter subscribers in Texas through phone calls and text messages.

**FACTS GIVING RISE TO THIS ACTION**

**ELLZEY FORMS KNOWTEQ SOLUTIONS FOR FRAUDULENT PURPOSES**

18.     On or about March 1, 2021, Defendant Knowteq Solutions, through authorized representative Natoshia Ellzey, filed a Certificate of Formation with the Office of the Secretary of State of Texas.  *See* **Exhibit A**, Certified Copy of Certificate of Formation.

19.     The effective date of the filing is listed as March 1, 2021.  *See* Exhibit A.

20.     The Certificate of Formation states the alleged business purpose of Knowteq Solutions is "for the transaction of any and all lawful business for which limited liability companies may be organized under the Texas Business Organizations Code."  *See* Exhibit A.

21.     This is not the business purpose of Knowteq Solutions.  Rather, Knowteq Solutions was formed to commit fraud and engage in unfair competition, conspire to engage in

fraud and unfair competition, and commit other unlawful activities as detailed throughout this Complaint.

22.     Ellzey is the sole member of Knowteq Solutions and the registered agent of Knowteq Solutions.  *See* Exhibit A

23.     Ellzey is the sole manager of Knowteq Solutions and on information and belief, has complete control of Knowteq Solutions' actions.

24.     Ellzey is aware of the fraudulent activities of Knowteq Solutions, directs that conduct, and personally benefits from the fraudulent conduct.

25.     On information and belief, Knowteq Solutions is not adequately capitalized and does not observe necessary corporate formalities.

26.     Earlier this year, Ellzey and Knowteq Solutions shared the same address of 10122 Churchill Oaks Lane, Houston, Texas 77044.  10122 Churchill Oaks Lane, Houston, Texas 77044 is a residential address.  Ellzey has registered a motor vehicle she personally owns at this address as well as another limited liability company called IT Arena LLC.

### DEFENDANTS' FALSE REPRESENTATIONS AND FRAUD

27.     Soon after Ellzey formed Knowteq Solutions, and at least as early as April 29, 2021, Defendants began sending text messages to Charter subscribers using the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks, falsely stating Charter subscribers could receive a discount on their Spectrum bills if paid through Knowteq Solutions.

28.     Defendants' fraudulent business scheme, which began on or about April 29, 2021, is carried out against Charter and Charter subscribers as follows:

   a.     Defendants send a text message offering Charter subscribers a discount on their Spectrum bill if they use Knowteq Solutions to facilitate the payment – that text message

contains the infringing use of Charter's trademarks;

     b.    A subscriber responds to the text message link by phone or a responsive text message with the assumption he is communicating with Charter or an authorized vendor for Charter;

     c.    The subscriber provides Defendants with information, including name, Spectrum account information (service address, account number, security code) and financial information;

     d.    Using the subscriber's fraudulently obtained Charter account details and other information, Defendants call Spectrum impersonating the subscriber and make a payment on the account using a stolen credit card or invalid checking account;

     e.    Defendants are provided with a payment confirmation number;

     f.    Defendants send the payment confirmation number and payment amount to the subscriber via text message;

     g.    Defendants then initiate a payment to Knowteq Solutions from the Charter subscriber's own bank account (or credit card) for the agreed discounted amount;

     h.    The payment made by Defendants to the subscriber's Spectrum account is ultimately rejected by the financial institution (e.g., for invalid checking account or stolen/closed credit card); and

     i.    The subscriber's Spectrum account consequently shows a payment reversal, and the account remains unpaid.

29.    Defendants' fraudulent business scheme is exemplified by the following text message sent by Defendants to a Charter subscriber, whom Defendants carried out their fraudulent business scheme against, as detailed above.

30.     For example, on or about April 29, 2021, Defendants sent a text to a Charter subscriber falsely stating, among other things, that "KNOWTEQ SOLUTION" is an "Authorized Retailer" and purporting to accept payment and provide a confirmation number for said payment.



31.     In and around the same time as the foregoing text message was sent, on May 8, 2021, Charter learned that Defendants were perpetrating their fraudulent business scheme on Charter and Charter subscribers.

7

32.     This exemplar text is just one of many believed to have been sent by Defendants to Charter subscribers.

33.     On or about June 1, 2021, a Charter representative attempted to contact Defendants a phone number associated with Knowteq Solutions: (713) 309-9759.  The call was answered by a person who identified herself as Natoshia Ellzey.  She was asked about her association with Knowteq Solutions and its relationship with Charter.  She stated she was the owner of Knowteq Solutions and was a Spectrum authorized vendor and her company was being used to facilitate customer payments.  These statements are FALSE.  On this call, Charter's representative stated that Defendants' conduct was not authorized by Charter.  In response, Ellzey disconnected the call, and Charter's return calls to the same phone number went unanswered.

34.     Defendants' conduct is ongoing and continues to date, and Charter and Charter subscribers continue to be victimized by Defendants' scheme, which improperly capitalizes on the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and good will.

35.     Defendants, through their agents, employees and other representatives, represented and continue to represent that they are associated with Charter or its Spectrum brand, which is FALSE, and Defendants are aware the representation is false.

36.     Defendants make these false representations with the intent to mislead Charter subscribers into taking an action based on the misrepresentations.  Charter subscribers reasonably relied on the false representations, were misled, and in reliance on the misrepresentations, took the action intended and provided the financial, account, and other information requested by Defendants.  As a result of Defendants' actions, Charter subscribers were injured.

37.     Defendants, through their agents, employees and other representatives, also represented and continue to represent to Charter that they are Charter subscribers making a valid payment due on the subscribers' accounts, which is FALSE, and Defendants are aware the representation is false.

38.     Defendants further made these false representations with the intent to mislead Charter into taking an action.  Charter reasonably relied on the false representations that Defendants were the Charter subscribers Defendants were impersonating, and further relied on Defendants' payment methods provided to Charter as valid and authorized.  As a result, Charter took the action Defendants intended, and was injured.  Defendants misappropriated payments for Charter's services that rightfully belong to Charter and have misappropriated and infringed upon Charter's intellectual property.

39.     Defendants' wrongful actions directed towards Charter and Charter subscribers were and are willful and wanton and taken in direct disregard of Charter's rights and responsibilities, and have caused and continue to cause harm to Charter.

## CONCERTED UNLAWFUL ACTIVITIES

40.     Smishing is a form of cyber fraud in which a criminal, pretending to be a legitimate entity, sends a text message to a victim.

41.     Defendants did not come up with the fraudulent and infringing scheme set forth in this Complaint in a vacuum.

42.     In fact, Charter subscribers have notified Charter of nearly identical fraudulent and infringing schemes perpetuated by other individuals and companies operating in a manner similar to Defendants.

43.     Defendants worked in concert with one or more John Does to learn how to set up

the fraudulent and infringing scheme Defendants have perpetuated and continue to perpetuate on

Charter and Charter subscribers, as described herein.

44.     On information and belief, this/these John Doe(s), in and around the time

Knowteq Solutions was formed in March of 2021, instructed Defendants as to how to structure

Knowteq Solutions to exist for purpose of a criminal enterprise and taught Defendants how to

impersonate Charter; how to infringe upon the CHARTER, CHARTER SPECTRUM and

SPECTRUM family of marks; how to lure victims into providing Defendants with confidential

financial and other sensitive information; how to impersonate these victims in interactions with

Charter; and how to obtain and use fraudulent payment mechanisms in interactions with Charter

through the internet, phone, and/or other means.

45.     Defendants then intentionally and knowingly committed these unlawful activities,

which caused harm to Charter and to Charter subscribers, and resulted in damage to Charter.

## CHARTER'S INTELLECTUAL PROPERTY

46.     CCH is the owner of federally registered service marks "CHARTER,"

"CHARTER SPECTRUM" and "SPECTRUM."  *See* **Exhibit B**.

47.     CCH is also the owner of dozens of other federally registered marks and designs

for communications-related services that incorporate the SPECTRUM brand, such as

SPECTRUM TV, SPECTRUM INTERNET, and SPECTRUM BUSINESS.  A list of registered

trademarks is attached as **Exhibit C** (collectively referred to herein as the SPECTRUM family of

marks).

48.     CCO and other related Charter entities use the CHARTER, CHARTER

SPECTRUM, and SPECTRUM family of marks and designs with permission of CCH.

49.     The CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and

designs are well known and are used across the United States.

50.     Charter and its related entities have invested significant time, effort, and resources in the development and promotion of their business and the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks throughout the United States.

51.     Charter has developed substantial good will in the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and has acquired rights, both by virtue of federal trademark registrations and by common law rights in the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks.

52.     Defendants' actions, described above, have threatened and impaired the good will and reputation of Charter and the services provided under the CHARTER SPECTRUM and SPECTRUM name.

53.     Defendants have intentionally and deceptively misappropriated and used the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks to defraud Charter and Charter subscribers.

## CONSUMER CONFUSION AND RESULTING INJURY TO CHARTER

54.     Defendants' infringing use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks has caused and is likely to continue to cause consumer confusion or mistake regarding the source of goods and/or services in the communications market and the companies with which Charter chooses to associate.

55.     Charter uses the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks for services related to the provision of communications products and services.

56.     The CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks are strong and have nationwide recognition.

57.     Charter uses the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks on its website, on TV commercials, in print ads, in radio ads, in internet ads, in direct (written and verbal) communications with Charter subscribers, on hardware related to the provision of services, and many other streams of commerce and marketplaces.

58.     Defendants use "CHARTER SPECTRUM" and "SPECTRUM," which are identical to CCH's registered marks.

59.     Defendants use "CHARTER SPECTRUM" and "SPECTRUM" in relation to a fraudulent scheme designed to steal money from Charter subscribers and defraud Charter and Charter subscribers under the guise of assisting Charter subscribers to pay their Spectrum-branded bills at a discount.

60.     Defendants have infringed the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks in written and oral communications to Charter subscribers.

61.     Defendants created a false association between Knowteq Solutions and Charter by stating that Knowteq Solutions is authorized to work with Charter subscribers on Charter's behalf.

62.     On information and belief, Defendants intended to create a false association between Knowteq Solutions and Charter by stating that Knowteq Solutions is authorized to work with Charter subscribers on Charter's behalf.

63.     Charter has never consented to Defendants using the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks.

64.     Defendants' use in commerce of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks has caused Charter subscribers to be confused and to form a false association between Knowteq Solutions and Charter.

65. The false association created in the consumer's mind is to Defendants' benefit and Defendants have willfully taken advantage of the false association to defraud Charter and Charter subscribers.

66. Defendants' infringement of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks is the key to Defendants' fraudulent scheme and the infringement is designed to rely on Charter's established good will in the CHARTER SPECTRUM and SPECTRUM brands to gain victims' trust.

67. Charter subscribers have actually been confused by Defendants' infringing use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks.

68. Charter subscribers have fallen victim to Defendants' intentional creation of a false association between Charter and Knowteq Solutions.

69. Defendants are likely to continue to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, thereby causing Charter irreparable harm.

70. Defendants' continued use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks after notice from Charter of infringement, renders Defendants' continued infringement intentional and willful.

## FIRST CLAIM FOR RELIEF

### (Against Defendants For Common Law Fraud )

71. Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 71 hereof.

72. Defendants' fraudulent business scheme is detailed in Paragraphs 3-7 and 18-71.

73. Defendants made false and material representations and omissions to Charter, including but not limited to: (i) stating that Defendants were Charter subscribers; (ii) using

13

Charter subscribers' account information to lure Charter into relying on this false representation; (iii) purporting to make a payment on the impersonated Charter subscriber's account; and (iv) instead stating and utilizing false and fraudulent payment information to induce Charter to provide Defendants with payment confirmation.

74.     These material representations and omissions, as set forth above, were false.

75.     Defendants further knowingly made these false representations with the intent to mislead Charter into taking an action based on the misrepresentations.

76.     Charter reasonably relied on the false representations that Defendants were Charter subscribers, and further relied on Defendants' representations that the payment methods being provided to Charter were valid.  As a result, Charter took the action Defendants intended, and was injured as a result.

77.     In furtherance of their scam, Defendants also made false representations and omissions to Charter subscribers, specifically with the intent to defraud Charter and Charter subscribers of payments that should have been made to Charter.  These false representations and omissions include, but are not limited to, the following: (i) stating that Knowteq Solutions was associated with Charter; (ii) stating that Knowteq Solutions was authorized to interact with Charter subscribers; (iii) stating that Knowteq Solutions would arrange payment of the balance due on Charter subscribers' accounts at a discount; and (iv) stating that the money Knowteq Solutions took from the subscriber would be used to pay Charter.

78.     These representations and omissions, as set forth above, were false.  Charter never authorized Defendants to make such statements or offers.

79.     When Defendants made the representations, they knew them to be false, and said representations were made by Defendants with the intent to deceive and to induce Charter

14

subscribers to use Knowteq Solutions for payment services.  Instead of using the subscriber's money to pay a Spectrum bill, Defendants intended to, and did, fraudulently keep that money for themselves.

80.     On information and belief, Ellzey, as the sole member, manager and director of Knowteq Solutions, formed Knowteq Solutions for the sole purpose of engaging in fraud and unfair competition, conspiring to engage in fraud and unfair competition, and other unlawful activities for her direct personal benefit.

81.     There is such unity of interest and ownership that the separate personalities of Knowteq Solutions and Ellzey no longer exist, as the circumstances indicate that Knowteq Solutions is merely a façade for the operations of Ellzey.

82.     The circumstances detailed throughout this Complaint show that adherence to the fiction of separate corporate existence would sanction a fraud and promote injustice, as Knowteq Solutions has been used as part of an unfair device to achieve an inequitable result.

83.     On information and belief, Ellzey, as the sole member, manager and director of Knowteq Solutions has complete control of and directed Knowteq Solutions' activities, has directed those activities for the willful infringement of Charter's marks and purposeful creation of a false affiliation in the public's mind between Knowteq Solutions and Charter and its related entities, and should be held personally liable to Charter for Knowteq Solutions' actions and damages caused by such actions.

84.     Ellzey is using Knowteq Solutions as a sham for perpetrating fraud.  The corporate veil should be pierced and Ellzey should be held personally liable to Charter for Knowteq Solutions' actions and for any damages caused by such actions.

85.     As a direct and proximate result of the aforementioned fraudulent conduct,

Defendants caused Charter to suffer the damages and injuries herein alleged.

86.     Defendants' conduct was outrageous due to their fraudulent intent and wanton and willful disregard for the rights of Charter and Charter subscribers.  Defendants' actions in defrauding Charter were intentional, wanton, willful, outrageous, deliberate, done with evil motive, and in willful disregard and indifference to the interests and rights of Charter, thus warranting an award of punitive damages in a fair and reasonable amount to be determined at trial or by this Court.

87.     Defendants' actions entitle Charter to general and special damages for all of the Defendants' income derived from their past unlawful conduct to the full extent provided by law.

88.     Charter has no adequate remedy at law for the continuing wrongful conduct. Charter has been, and absent injunctive relief will continue to be, irreparably harmed by the Defendants' ongoing actions in perpetuating the above-described fraud.

## SECOND CLAIM FOR RELIEF

### (Against Defendants and John Does 1-5 For Civil Conspiracy)

89.     Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 89 hereof.

90.     Defendants are not alone in their fraudulent smishing attacks on Charter and Charter subscribers.  Charter subscribers have notified Charter of nearly identical fraudulent schemes perpetrated by other entities.

91.     These nearly identical schemes are no coincidence.  Rather, they are orchestrated by unknown John Does 1-5, who, on information and belief, in and around the time Knowteq Solutions was formed in March of 2021, instructed Defendants over the internet, phone, and/or other means on setting up the fraudulent scheme through one or more of the following acts: (i) the creation of an LLC or other similar entity for the fraudulent purposes described herein; (ii)

the use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks to carry out the plan; (iii) the representations necessary to deceive Charter subscribers into remitting confidential information to Defendants; (iv) impersonating Charter subscribers in interactions with Charter; and/or (v) obtaining and using fraudulent payment mechanisms in interactions with Charter.

92.    Defendants and unknown John Does 1-5 have acted, and are acting, in concert to commit the unlawful acts alleged herein, including fraud, infringement, and unfair competition, as part of a common scheme.

93.    Defendants and unknown John Does 1-5 each understood the objectives of the scheme, accepted the objectives of the scheme, and agreed to do their part to further the scheme.

94.    Defendants and unknown John Does 1-5 have agreed to commit the fraud, infringement, and unfair competition alleged herein through one or more of the following acts that have resulted in damage: (i) intentionally and deceptively misappropriating and using the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks; (ii) falsely representing and continuing to represent that they are associated with Charter or its Spectrum brand to both Charter and to Charter subscribers; (iii) soliciting, accepting, and retaining money through the intentional and deceptive misappropriation and use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and other misrepresentations to Charter and Charter subscribers; (iv) impersonating Charter subscribers in interactions with Charter; and (v) obtaining and using fraudulent payment mechanisms in interactions with Charter.

95.    The conspiracy described above included Defendants and other John Does that may be finally determined through discovery in this case.

96.    The corporate veil should be pierced and Ellzey should be held personally liable

to Charter for Knowteq Solutions' actions and for any damages caused by such actions for the reasons set forth in Paragraphs 3-7, 11-12 and 18-71.

97.     Charter has been and continues to be harmed by Defendants and John Does 1-5's acts.

98.     Defendants and John Does 1-5's actions entitle Charter to general and special damages for all of the Defendants and John Does 1-5's income derived from their past unlawful conduct to the full extent provided by law.

99.     Defendants and John Does 1-5's conduct was outrageous due to their fraudulent intent and reckless indifference to the rights of Charter and Charter subscribers.  Defendants and John Does 1-5's actions in defrauding Charter were intentional, wanton, willful, outrageous, deliberate, done with evil motive, and in reckless disregard and indifference to the interests and rights of Charter, thus warranting an award of punitive damages in a fair and reasonable amount to be determined at trial or by this Court.

### **THIRD CLAIM FOR RELIEF**

**(Against Defendants For Infringement of Registered Trademarks in Violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))**

100.     Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 100 hereof.

101.     CCH is the owner of the federally registered service marks CHARTER, CHARTER SPECTRUM, and SPECTRUM.  See Exhibit B.

102.     CCH is also the owner of dozens of other federally registered marks and designs for communications-related services incorporating the SPECTRUM brand.  A partial list includes SPECTRUM TV, SPECTRUM INTERNET, and SPECTRUM BUSINESS.  See Exhibit C.

103.     CCO and other related Charter entities use the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks with permission from CCH.

104.     The CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks are valid and enforceable.

105.     Charter and its related entities use the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks in interstate commerce.

106.     The acts of Defendants alleged herein constitute the use in commerce, without the consent of Charter, of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks in connection with the offering of services related to the provision of communication services, which use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe Charter's rights in one or more of its trademarks, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

107.     Defendants' use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks was willful, intentional, and done with the knowledge that said use was infringing and unauthorized.

108.      The corporate veil should be pierced and Ellzey should be held personally liable to Charter for Knowteq Solutions' actions and for any damages caused by such actions for the reasons set forth in Paragraphs 3-7, 11-12 and 18-71.

109.     Charter has been and continues to be harmed by Defendants' acts.

110.     Defendants' actions entitle Charter to damages for all of the Defendants' income derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. § 1117.

111.     Charter has no adequate remedy at law for the foregoing wrongful conduct.

Charter has been, and absent injunctive relief will continue to be, irreparably harmed by the Defendants' actions.

## **FOURTH CLAIM FOR RELIEF**

**(Against Defendants For False Association and Trademark Infringement in Violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))**

112.     Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 112 hereof.

113.     The CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and designs are well known and are used across the United States and serve as trademarks for Charter.

114.     Charter and its related entities have invested significant time, effort, and resources in the development and promotion of their business and the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks throughout the United States.

115.     Charter and its related entities have developed substantial good will in the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks and has acquired rights, both by virtue of federal trademark registrations and by common law rights in the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks.

116.     The CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks are valid and enforceable.

117.     The acts of Defendants alleged herein constitute the use in interstate commerce of a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, in connection with the sale, or offering for sale, of goods in violation of section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  These acts are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of

Defendants with Charter, or as to the origin, sponsorship, or approval of Defendants' services by Charter.

118.    Defendants' use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks constitutes trademark infringement.

119.    Defendants' use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks constitutes unfair competition through the creation of a false association.

120.    Defendants used the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks intending to create an association between itself and Charter (or Charter's related entities).

121.    Defendants' use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks is willful, intentional, and done with the knowledge that said use is infringing and unauthorized.

122.    Defendants' use of the marks has led to actual confusion of Charter subscribers.

123.    The corporate veil should be pierced and Ellzey should be held personally liable to Charter for Knowteq Solutions' actions and for any damages caused by such actions for the reasons set forth in Paragraphs 3-7, 11-12 and 18-71.

124.    Charter has been and continues to be harmed by Defendants' acts.

125.    Defendants' acts entitle Charter to damages for all of the Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. § 1117.

126.    Charter has no adequate remedy at law for the foregoing wrongful conduct. Charter has been, and absent injunctive relief will continue to be, irreparably harmed by the Defendants' actions.

## FIFTH CLAIM FOR RELIEF

### (Against Defendants For Texas Common Law Unfair Competition)

127.    Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 127 hereof.

128.    Charter has developed significant rights in the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks.

129.    Defendants' acts, as described in Paragraphs 3-7 and 18-71, have resulted in the unauthorized use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks, and resulted in actual and potential consumer confusion as to the association of Knowteq Solutions with Charter.

130.    Defendants' conduct constitutes unfair competition under the common law and shows an intent to deceive the consumer.

131.    The corporate veil should be pierced and Ellzey should be held personally liable to Charter for Knowteq Solutions' actions and for any damages caused by such actions for the reasons set forth in Paragraphs 3-7, 11-12 and 18-71.

132.    Defendants' actions entitle Charter to general and special damages, including, but not limited to, damages in the amount of all of Defendants' income derived from their past unlawful conduct, and for all other damages provided for by the common law of the State of Texas.

133.    Charter has no adequate remedy at law for the foregoing wrongful conduct. Charter has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## SIXTH CLAIM FOR RELIEF

### (Against Defendants For Texas Common Law Unjust Enrichment)

134.     Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 134 hereof.

135.     CCO and CCH have developed significant rights in the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks, as discussed in Paragraphs 47-52 above.

136.     Defendants' acts, as described in Paragraphs 3-7 and 18-71, have resulted in the unauthorized use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks, and resulted in actual and potential consumer confusion as to the association of Knowteq Solutions with Charter.

137.     Defendants' use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks constitutes trademark infringement and unfair competition through the creation of a false association.

138.     Defendants used the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks intending to create an association between itself and Charter (or Charter's related entities).

139.     Defendants' use of the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks is willful, intentional, and done with the knowledge that said use is infringing and unauthorized.

140.     Defendants took undue advantage of Charter subscribers through fraudulent misrepresentations that Knowteq Solutions was associated with Charter.

141.     Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Charter and Charter subscribers as a result of the fraudulent activity described above in Paragraphs 3-7 and 18-71.

142.     The corporate veil should be pierced and Ellzey should be held personally liable

to Charter for Knowteq Solutions' actions and for any damages caused by such actions for the reasons set forth in Paragraphs 3-7, 11-12 and 18-71.

143.    Defendants' actions entitle Charter to general and special damages, including, but not limited to, damages in the amount of all of Defendants' income derived from their past unlawful conduct to the full extent provided for by the common law of the State of Texas.

144.    Charter demands an accounting of Knowteq Solutions' profits to disgorge Defendants of their unjust enrichment and to deter Defendants from future infringement of Charter's intellectual property.

145.    Charter has no adequate remedy at law for the foregoing wrongful conduct. Charter has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## SEVENTH CLAIM FOR RELIEF

### (Against Defendants For Exemplary Damages)

146.    Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 146 hereof.

147.    Pursuant to Tex. Civ. Prac. & Rem. Code § 41.003(a)(1), (2), and (3), exemplary damages may be awarded when the injury or harm to which the claimant seeks recovery results from malice, fraud, or gross negligence. Charter seeks exemplary damages against Defendants in an amount to be determined, considering among other things, the degree of culpability, the extent to which the conduct offends a public sense of justice and propriety, the costs and inconvenience incurred by Charter in prosecuting this action, and the net worth of Defendants.

148.    More specifically, Defendants engaged in an intentional pattern of behavior to infringe, misappropriate, and use Charter's CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks in an effort to defraud Charter and Charter subscribers. Therefore,

Charter seeks an award of exemplary damages sufficient to punish Defendants and deter such conduct in the future.

149.    Additionally, pursuant to Tex. Civ. Prac & Rem. Cod § 41.008(13), the exemplary damage limitations are not applicable.

## EIGHTH CLAIM FOR RELIEF

**(Against Defendants For Attorneys' Fees)**

150.    Charter specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 150 hereof.

151.    As a result of Defendants' fraud, civil conspiracy, trademark infringement and unfair competition, Charter was compelled to employ Thompson Coburn LLP to represent it.

152.    Because this suit involves the culpable conduct of Defendants, attorneys' fees and costs should be awarded to Charter under 15 U.S.C. § 1117(a).

## JURY TRIAL DEMANDED

Charter hereby demands a jury on all jury-triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Charter prays for judgment as follows:

A.    For judgment that:

(i)    Defendants have engaged in fraud in violation of the common law of the State of Texas;

(ii)    Defendants have engaged in a civil conspiracy in violation of the common law of the State of Texas;

(iii)    Defendants violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

(iv)    Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a);

(v)     Defendants' violations of Sections 32 and 43(a) of the Lanham Act were willful, intentional, and done with knowledge that the use was unauthorized;

(vi)     Defendants have engaged in unfair competition in violation of the common law of the State of Texas;

(vii)     Defendants have been unjustly enriched by their unlawful conduct in violation of the common law of the State of Texas;

(viii)     A finding that Charter is entitled to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a);

(ix)     A finding that Charter is entitled to treble damages under Section 35(b) of the Lanham Act, 15 U.S.C. § 1117; and

(x)     A finding piercing the corporate veil to hold Ellzey personally responsible for Knowteq Solutions' actions and personally liable for Knowteq Solutions' monetary judgment.

B.     For an injunction restraining and enjoining the Defendants and their divisions, subsidiaries, officers, agents, employees, attorneys, and all those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from (i) making any communication, either written, verbal, or by text message infringing the CHARTER, CHARTER SPECTRUM, and SPECTRUM family of marks; or (ii) making any communication, either written, verbal, or by text message stating or implying that Knowteq Solutions is associated with or authorized by Charter, or assisting, aiding or abetting any other person or entity in doing so.

26

C.      For an order requiring (i) that the Defendants account for and pay over to Charter all of the Defendants' profits, derived from their unlawful conduct and for damages as provided for by Section 35(a) of the Lanham Act, 15 U.S.C. § 1117; (ii) to the extent not included in section (i) of this prayer, for all gains or monetary benefits unjustly received by Defendants as a result of their conduct to the full extent provided for by the common law of the State of Texas; and (iii) awarding Charter direct and indirect damages to the full extent provided for by the common law of the State of Texas; and

D.      For costs of suit as provided for by Section 35(a) of the Lanham Act, 15 U.S.C. § 1117 , attorneys' fees, and such other and further relief as the Court shall deem appropriate.

DATED:  October 5, 2022

Respectfully submitted by:

By: _/s/ Douglas S. Lang_
Douglas S. Lang
Texas Bar No. 11895500
John P. Atkins
Texas Bar No. 24097326
**Thompson Coburn LLP**
2100 Ross Ave., Suite 3200
Dallas, Texas 75201
T: (972) 629-7100
F: (972) 629-7171
dlang@thompsoncoburn.com
jatkins@thompsoncoburn.com

and

Amanda J. Hettinger, 55038MO
(_Pro Hac Vice Application to be filed_)
Robyn H. Ast-Gmoser, 59236MO
(_Pro Hac Vice Application to be filed_)
**Thompson Coburn LLP**
One US Bank Plaza
St. Louis, Missouri  63101
314-552-6000
FAX 314-552-7000
ahettinger@thompsoncoburn.com
rastgmoser@thompsoncoburn.com

_Attorneys for Plaintiffs_